IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ____ D.C.

05 DEC 23 PM 4: 44

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Cr. No. 04-20366-B/1 |
| ALAN BRAVERMAN, | ) | |
| Defendant. | ) | |

## ORDER DENYING DEFENDANT'S REQUEST FOR RELEASE PENDING APPEAL

Mr. Braverman seeks release pending appeal pursuant to 18 U.S.C. §3143(b)(1) asserting that the Court required him to pay restitution in a 45-day period and that the court failed to take into consideration the defendant's ability to pay restitution in establishing both the amount of restitution and defendant's payment schedule.

The defendant's assertions are incorrect and inconsistent with the record. At sentencing, Mr. Braverman, through his counsel, indicated that he would be able to make a substantial restitution payment and requested additional time within which to do so. Since restitution is a factor that is considered, under 18 U.S.C. §3553, in determining a defendant's sentence the court granted the defendant an additional period of time within which to make those payments prior to the entry of the Judgment in the case.

This document entered on the docket sheet in compliance
with Rule 55 and/or 32(b) FRCrP on  12-27-05

68

The Court did not "order" Mr. Braverman to make any payments within the additional 45 days allowed before the entry of the judgment and commitment. The court indicated that, if the substantial payment that defendant represented would be paid was, in fact, paid, defense counsel could petition the Court to consider that payment, and seek another determination under 18 U.S.C. §3553 regarding the appropriate sentence in the case.

It now appears that Mr. Braverman overstated his ability to make payment, and now seeks to mischaracterize the events that occurred at sentencing. Indeed, the court's sentencing decisions reflected the statements of the defendant as to both his intention to repay and his ability to repay based on certain business prospects. As recorded in the initial presentence report, prepared on May 3, 2005, the defendant told the NBC branch manager with whom he was dealing that "he expected a $1,000,000 payment from a bank in Malaysia. Money would be wired to his lawyer, who would then wire the money that was owed to NBC." Presentence report, ¶9, p. 5. In paragraph 12 of the report, Mr. Braverman described his business operations as loan-brokering firms "which set up financing for commercial, construction, equipment and Small Business Administration loans. According to Braverman, money started getting tight toward the end of 2002 when he was helping pay for his son's wedding and remodeling his home. Braverman thought that

2

these expenses would be no problem because he was completing a business deal with a Malaysian firm that was looking for a $500,000,000 loan. Braverman stated that he brokered the deal with Deutsche Bank in Hong Kong for the Malaysian firm. His commission for this deal would be approximately $2.5 million." Id. at ¶12. In paragraph 15 of the presentence report, when interviewed by investigators in this case, Mr. Braverman said that he "felt very guilty about defrauding the banks and that he intended to repay the money that he owed. He indicated that he had lost sleep and had not been hanging out with his friends or going to Temple because he was guilty and embarrassed. Braverman also stated that he planned to repay the money to NBC when he received his commission for the business deal between the Malaysian firm and Deutsche Bank, which he was expecting within two weeks. He asked the Special Agents if they could hold off on their investigation for a few weeks, so that he could repay the money to NBC." Presentence report, p. 7, ¶15.

Mr. Braverman's position never changed throughout the proceedings. In the first addendum to the presentence report dated May 24, 2005, Mr. Braverman acknowledged responsibility and then stated "...I did it [defrauded the National Bank of Commerce] in anticipation of receiving money to cover the shortage. Unfortunately, the money I anticipated coming in never arrived in the amounts I thought it would. ...I am going to have to suffer the

3

consequences of my actions which will include making restitution to the bank and potential jail time." Addendum to Presentence Report (May 24, 2005).

In a second addendum to the presentence report, Mr. Braverman indicated to the report writer that "Ackmor Corporation in Kuala Lumpur, Malaysia owes him $2.5 million for a payment for services; however, he described this debt as uncollectible." Second Addendum (July 7, 2005). He went on to advise the reporting officer regarding the status of one of his corporations, Global Resources, Inc., indicating there "are currently no earnings; however, if the current projects are successful, they should result in payments to the defendant of $200,000 to $300,000 plus potential residuals. The venture is speculative, the closing date is uncertain." Id.

Prior to the second addendum to the presentence report, Mr. Braverman, through his counsel, in requesting a continuance of the sentencing date, stated "his plea agreement called for him to make restitution in the approximate amount of $168,000. Defendant is attempting to raise the money and needs additional time to make arrangements." Defendant's Motion to Continue Sentencing Date and Memorandum in Support Thereof (June 3, 2005). During the sentencing hearing, defendant continued to insist, through the statements of his counsel, Daniel Johnson, Esq.; through the

4

statements of Mr. Brett Stein, a witness for the defense during the hearing, and now the attorney for the defendant; and through his own statements, that he would make the full restitution payment to the National Bank of Commerce. As Mr. Johnson said, on Mr. Braverman's behalf at page 9 of the transcript "but I can say that my client is out there beating the bushes trying to get this done. I mean he is on the phone to me and to my office on a daily basis giving me reports about things that are about to happen, it is just that to date it has not come through." Tr. at 9-10 (July 8, 2005). See Tr. at 8-9 ("give him the opportunity to try and pay them back. ...If he goes to jail for a year or 18 months...it is going to be difficult for him to pay this money back, that's my opinion. He has told me about some things that he has going that involve large amounts of money, but today, none of them have come anywhere close to fruition....")

Mr. Stein offered similar observations indicating, on page 11 of the transcript, that "the only thing he was talking about was making restitution, doing what he knows best...." Tr. at 11. Mr. Stein went on to observe "we have him now in the right frame of mind where he can make...restitution and get along with his life." Tr. at 13. Mr. Stein then observed "I think that give this man a chance, he will have restitution...." Id.

5

Mr. Braverman, on page 14 of the transcript continued to offer an optimistic view regarding his ability to pay full restitution. Specifically, he stated "there are some projects that I have been working on that will come to fruition in the not too distant future, and I will make . . . make enough money certainly to pay restitution, and I'm trying to get my family back.  If your Honor will give me the opportunity to do that, I would be most grateful." Tr. at 14.

It is correct that the court expressed some concern about the ability of the defendant to make the restitution required but accepted the representations made by the defendant, his counsel, and Mr. Stein.  Tr. at 18.  When the court expressed some skepticism, Mr. Braverman volunteered "Judge, I mean I do have signed contracts of developments that are happening over the next two or three months, I didn't think to bring them into court, but there are projects that are underway...."  Tr. at 18.  The defendant then went on to describe the specific contracts, indicating that there was "a construction project in Olive Branch, Mississippi.  There's a construction project in Atlanta, Georgia, and another construction [project] in Atlanta, Georgia building a hotel...the remuneration for me will be more than sufficient to take care of my responsibilities to the court and to the NBC bank. And there are signed contracts in hand."  Tr. at 19.

6

Because the defendant projected an imminent ability to pay a large amount of restitution and his counsel indicated that ability to pay would be detrimentally affected by the entry of Judgment and his incarceration, it was determined in discussion with counsel, that one way to allow an opportunity for these payments to be made would be for the court to withhold the entry of the final judgment for a period of time. Tr. at 20. In this context, Mr. Johnson, the defendant's counsel, indicated "we request 45 days, your Honor." Tr. at 20.

A court may reasonably rely on the representations of defense counsel, defense witnesses, and the defendant himself in determining the appropriate amount of restitution to be imposed and the payment schedule in the event that a lump sum payment cannot be made. In the instant case, the court balanced the defendant's own insistence that full payment could be made with the financial information available in the presentence report in arriving at an order requiring the payment of restitution[1] and in establishing a reasonable monthly payment of 10% of the defendant's gross income should the lump sum payment as represented by the defendant not be forthcoming. The court also left open the possibility of re-evaluating the sentence imposed based on additional information

---

[1] No party objected to the calculation of the $167,617.65 as the appropriate amount of restitution in the case.

should the defendant make the large restitution payment that he represented was imminent.

In dealing with the defendant's motion to set bail pending appeal, the court finds that the defendant should be detained in accordance with 18 U.S.C. §3143(b)(1). That code section requires that a defendant sentenced to a term of imprisonment be detained

> unless the judicial officer finds -
>
> (A) By clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under §3142(b) or (c) of this title; and
>
> (B) That the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in -
>
>> (i) reversal,
>> (ii) an order for a new trial,
>> (iii) a sentence that does not include a term of imprisonment, or
>> (iv) a reduced sentence to a term of imprisonment less that the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. §3143(b)(1). The issue raised by the defendant in his motion does not present "a substantial question of law or fact." Specifically, the appeal does not raise an issue that presents a "close question or one that could go either way" nor is the question "so integral to the merits of the conviction that it is

more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." <u>United States v. Pollard</u>, 778 F.2d 1177, 1182 (6th Cir. 1985). The question presented by the defendant is not a close one. The record does not support the assertions of the defendant. Any suggestion that the court ordered the defendant to pay full restitution within 45 days is simply incorrect. The defendant requested and received a delay in the entry of the judgment and committal to allow an opportunity to make full restitution and seek to supplement the record in hopes of obtaining a different sentence. The additional time was allowed because of the <u>defendant's</u> constant insistence that the payment of full restitution was always just around the corner. Moreover, the amount of restitution was never in dispute. No objections were filed and counsel for the defendant acknowledged the restitution amount during the presentence hearing, as did the defendant. Moreover, restitution was mandatory pursuant to 18 U.S.C. §3663A(1)(c)(1)(A)(ii). Additionally, the court took into consideration the defendant's economic circumstances in determining the payment schedule in the case. Finally, the sentence in this case was consistent with the terms of the plea agreement and within the adjusted advisory guideline range.

For the reasons stated herein, therefore, defendant's motion to set bail pending appeal is hereby DENIED.

SO ORDERED this 23 day of December, 2005.

*/s/ Jon P. McCalla*
JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 68 in case 2:04-CR-20366 was distributed by fax, mail, or direct printing on December 27, 2005 to the parties listed.

---

Brett B. Stein
FINLEY & STEIN
236 Adams Avenue
Memphis, TN 38103

Carroll L. Andre
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Honorable Jon McCalla
US DISTRICT COURT